**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LARRY D. WILLIAMS, II, | § | |
| | § | |
| *Plaintiff*, | § | AMENDED COMPLAINT |
| | § | |
| v. | § | CIVIL ACTION NO. 4:19-cv-782 |
| | § | |
| | § | JURY TRIAL DEMAND |
| APPLE INC., | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, LARRY D. WILLIAMS, II, Plaintiff in the above-styled and numbered cause, complaining of Defendant, APPLE, INC., and in support thereof would respectfully show unto this Honorable Court the following:

**I. DISCOVERY LEVEL**

1. Plaintiff intends to conduct Discovery pursuant to a Level 3 Discovery Control Plan, as set forth in TEX. R. Civ. P. 190.4, and Plaintiff hereby request that the Court enter a Level 3 Discovery Control Plan.

**II. PARTIES**

2. Plaintiff, LARRY D. WILLIAMS, II, (hereinafter "Mr. Williams") is an individual and citizen of the State of Texas who resides in Harris County, Texas.

3. Defendant, APPLE, INC., is a foreign for-profit corporation, organized and existing under the laws of the State of California. Defendant has its principal office in the State of California, which is located at 1 Infinite Loop, Cupertino, California 95014.

**III. JURISDICTION**

4. This Court has jurisdiction over the lawsuit under 28 U.S.C. § 1332(a)(1), as the Plaintiff and the Defendant are citizens of different states and the amount in controversy exceeds $75,000, excluding interest and costs.

## IV. VENUE

5. Venue is proper in this district under 28 U.S.C. § 1391(a)(2), because all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

## V. CONDITIONS PRECEDENT

6. All conditions precedent have been performed or have occurred.

## VI. THE NATURE OF THE CAUSE OF ACTION

7. Defendant revolutionized the market in personal computing devices. Defendant's iconic mobile devices and features, including the iPhone and Facetime function, are currently the only, most distinctive and successful products in the world.

8. Part of what made Defendant and its products so successful was the security that was offered with their devices and services.

9. "If privacy matters in your life, it should matter to the phone your life is on." Apple, Inc., Privacy on iPhone youtube.com (2019).

10. Defendant has made numerous public claims of how privacy is important and is considered a civil liberty but has allowed for their device to essentially become a live microphone in your pocket. Plaintiff has been damaged herein by Defendant's iPhone.

11. This civil action arises out of serious, permanent, life changing damage done and sustained by Plaintiff following a foreseeable malfunction in Defendant's iOS 12.1 update, which caused privileged information to be shared with an unknown number of others unbeknownst to Plaintiff.

## VII. INTRODUCTION

12. Plaintiff brings this action for damages suffered as a direct and proximate result of the use of Defendant's iOS 12.1 update (sometimes referred to herein as "the Product" or "update"). The Product was intended to be used to add "group" Facetime calls.

13. At all times relevant to this action, Defendant was responsible for the design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of the Product to be used by consumers throughout the United States and World.

14. All of Plaintiff's claims for damages relate to Defendant's design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of the Product. The Defendant's Product reached Plaintiff, by and through software updates directly to Plaintiff's iPhone, without substantial change in condition from the time it left Defendant's possession.

15. Plaintiff, used the Product in the manner in which it was intended. This manner included personal and business phone calls, and/or audio facetime, video facetime, text messaging and emailing functions which were all intended to be private between persons called by the Plaintiff or whom the Plaintiff directly and knowingly answered the phone/facetime calls from.

## VIII. FACTUAL BACKGROUND

16. Plaintiff, as with all attorneys, is held to the highest standard. Our profession is built on trust and the ability to discuss details with our clients all confidential matters without that information being relayed to a third party.

17. On or about January 25, 2019, that trust and ability to talk freely with Plaintiff's clients was betrayed to no fault of his own by Defendant's Product.

18. On this day Plaintiff was engaged in a private settlement meeting and deposition with an unnamed client and opposing law firm (unnamed to protect the identity and information of persons not named as parties as well as attorney client privilege), with several apple products that he uses for business purposes (his iPhone, apple watch, iPad and MacBook Pro laptop), all devices were placed on do not disturb so that there would be no interruptions during the deposition.

19. The Apple do not disturb function allows you to silence calls, alerts, and notifications that you get while your device is locked. The do not disturb function is intended to be used during periods when you do not want to be interrupted, such as meetings, formal events or at night. Here, Plaintiff was using this function in its intended purpose during a confidential deposition to avoid interruptions. However, the iPhone still allowed a third party to listen to audio from this deposition, due to a glitch or breach in its three-way facetime programming at the time.

20. All of the Plaintiff's Apple devices were on do not disturb so the devices did not ring, nor was the Plaintiff notified of any attempted facetime calls, the Plaintiff did not answer any of his Apple devices and was not even aware of the calls and breach of privacy until well after the deposition ended. The Plaintiff had the following devices in the deposition on January 25, 2019 MacBook Pro (Early 2015 model) serial number C02PR0C1FVH3, Apple iWatch series 2 serial number FH7TV9QQHJLJ, iPad mini serial number F9FS4YEMFCM6 and iPhone 6 serial number DNPP6PCHG5MH.

21. At all times hereinafter mentioned, Defendant designed, manufactured, distributed, and placed into the stream of commerce the Product and its components.

22. The Product was brought to market using a wireless transmission from Defendant's servers to Plaintiff's wireless device. Consumers, including Plaintiff, who currently use the Product as a form of communicating with others, have several alternative safer products available to purchase or use.

23. Plaintiff alleges that the Product is defective and as a result has caused irreparable harm and unnecessary injury. Defendant knew of the significant risk and importance of privacy for all consumers, including Plaintiff and did not adequately and sufficiently warn consumers, or the wireless phone community of such risk.

24. As a result of the Defendant's actions, Plaintiff and his family, friends, business associates and clients were unaware and could not have reasonably known or have learned through reasonable due diligence, that an unknown named third party was allowed to eavesdrop on Plaintiff's iPhone. Essentially the Product converted Plaintiff's personal iPhone into a microphone that was answered unbeknownst to Plaintiff and was used to listen and record Plaintiff's most intimate transaction, conversations and interactions without consent. While the iPhone and all other present apple devices were in do not disturb mode.

25. Plaintiff learned of the defect after undergoing a private deposition with a client when the Product allowed for the recording of said private deposition. However, because the defect allows for conversations and interactions to be heard and recorded without the knowledge or consent of the Plaintiff, it is currently unknown what other transaction, conversations and interactions have been recorded or heard. As a result, the damage to the Plaintiff is continuous and ongoing.

26. The Product was used in its intended purpose by Plaintiff. Plaintiff updated his iPhone for the purpose of adding group Facetime calls but not unsolicited eavesdropping. Plaintiff suffered irreparable harm. Plaintiff would not have used the Product if the risk of present and future damage and loss of privacy had been properly disclosed to Plaintiff and all consumers.

27. Defendant owed a duty to Plaintiff and all consumers to manufacture a safe product and to do so in accordance with industry standards, as well as the advertised standard of privacy to its consumers around the world.

28. That at all times relevant hereto the Defendant failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by the Product, including but not limited to the Product's failure to withstand its normal and intended use.

29. Defendant designed, manufactured, distributed and placed into the stream of commerce the Product and its components, during the relevant time period.

30. Defendant performed, completed, and was solely responsible for the design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of the Product, during the relevant time period.

31. Defendant had in their possession, during the relevant time period, testing, research and studies regarding cyber security and the Product's propensity to allow others to invade the privacy of its users, including Plaintiff.

32. Defendants had in their possession, during the relevant time period, information regarding the rate of privacy breaches and failure of the Product. The Defendant knew or should have known of the defects as early as January 19, 2019 as there were tweets to apple support about the defect on that day in addition to letters sent to Defendant's General Counsel as early as January 22, 2019.

33. That at all times relevant hereto, the officers and/or directors of the Defendant, unnamed herein participated in, authorized and/or directed the production and promotion of the aforementioned Product when they knew or should have known of the hazardous and dangerous propensities of the said Product, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

## IX. NEGLIGENCE

To recover under a negligence theory, a plaintiff must allege facts showing that: (1) the Defendant had a duty of care, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused the plaintiff's injury. *Romo*, 2011 WL 13250476, at *4 (citing *Dion v. Ford Motor Co.*, 804 S.W.2d 302, 310 (Tex. 1991)); *Howard*, 2017 WL 9325286, at *15. To state a breach of duty, the plaintiff must allege facts showing that the defendant failed to exercise ordinary care as a reasonably prudent person would do under similar circumstances. *Duarte v. Landstar Inway, Inc.*, No. SA-14-CA-1053, 2015 WL 12571570, at *1 (W.D. Tex. July 30, 2015) (citing *Nabors Drilling U.S.A., Inc. v. Escoto*, 288 S.W.3d 401 (Tex. 2009)).

34. Plaintiff incorporates the facts and allegations explained above as if fully set forth herein.

35. At all times material hereto, the Product was being used by Plaintiff for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold and/or marketed. Plaintiff was a foreseeable intended user of the Product. Defendant owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, testing, selling and/or marketing a product free from defects in workmanship that was safe and functional for consumer use and did not pose a foreseeable risk of harm to consumers. Defendant failed to exercise such reasonable care.

36. Defendant owed a duty to Plaintiff and all consumers to manufacture a safe product and to do so in accordance with industry standards. Defendant owed a duty to Plaintiff to adequately warn of the dangers inherent in the use of the product it developed, designed, manufactured, tested, sold and/or marketed. Defendant also owed a duty to Plaintiff to protect Plaintiff's privacy by not allowing for the unknown recording of either personal or professional conversations of the Plaintiff without the Plaintiff's knowledge or consent.

37. Defendant failed to adequately warn consumers of the dangers inherent in its product that is the subject of this suit. Defendant failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by the Product, including but not limited to the Product's failure to withstand its normal and intended use. Defendant failed to protect Plaintiff's privacy due to the defect in its product.

Defendant by its lack of warnings about the product defect failed to exercise ordinary care as a reasonably prudent person would do under similar circumstances

38. Plaintiff's damages are the direct and proximate result of the Defendant's negligence, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority.

39. Defendant was negligent in one or more of the following respects:
    a. Failing to take appropriate steps to ensure the Product did not essentially become a live microphone in your pocket;
    b. Failing to conduct an appropriate inspection;
    c. Marketing the Product in an unsafe condition;
    d. Failing to provide users of the Product adequate instructions for its safe use;
    e. Failing to provide user of the Product adequate warning concerning its use;
    f. Failing to thoroughly and adequately test the Product;
    g. Failing to discover defects in, and the dangerous condition of, the Product;
    h. Failing to warn the public in general, and Plaintiff in particular, of the dangers presented by the use of the Product;
    i. Failing to exercise due care and act with regard for the safety of those using its Product; and
    j. Such other and further acts and/or omissions as may be shown by the evidence at the trial of this cause.

40. Each of the above-listed acts and/or omissions, taken singularly or in combination, was a proximate cause of Plaintiff's damages. The above and foregoing acts and omissions of Defendant constitute negligence, which was the proximate cause of Plaintiff's resulting damages. Nothing Plaintiff did or failed to do caused or contributed to cause the occurrence made the basis of this suit.

## X. STRICT LIABILITY

To state a Texas design-defect claim, a plaintiff must allege facts showing that "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); TEX. CIV. PRAC. & REM.CODE § 82.005(a); *Barragan v. Gen. Motors LLC*, No. SA-15-CV-854-DAE, 2016 WL 3519675, at *3 (W.D. Tex. June 22, 2016). "[A] safer alternative design is a necessary component to a design defect claim." *Rodriguez v. Gilead Scis., Inc.*, No. 2:14-cv-324, 2015 WL 236621, at *3 (S.D. Tex. Jan. 16, 2015).

41. Plaintiff incorporates the facts and allegations explained above as if fully set forth herein.

42. Defendant is the manufacturer, designer, distributor and/or seller of the Product.

43. The Product was delivered to Plaintiff. At all times prior to delivery, the Product was in the exclusive control of Defendant, its agents, servants, employees and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

44. The Product was used by Plaintiff as designed and intended by the Defendant without any change in its condition from the time it left the control of the Defendant until it was used by Plaintiff. The products intended use as a communication device between people whether by telephone calls, text messages, emails or Facetime calls.

45. The Product and (Facetime calls specifically) is intended to be used by consumers such as the Plaintiff to communicate with other iPhone users whom the consumer chooses to communicate with and this is evidenced by the Product's normal process which consist of the device ringing and the consumer having the option to answer or decline to answer the call or Facetime call.

46. The Product's intended use was not for consumers to be able to be recorded whenever or wherever they are because the Product allowed a caller to listen to the consumer's conversations without the consumer answering the call and while the product was placed on do not disturb mode. The fact that this unintended use and defect was possible and being used against consumers made this product unreasonably dangerous. "When a manufacturer fails to properly warn of a product's dangerous propensities, that failure may make an otherwise non-defective product unreasonably dangerous." *McLennan v. Am. Eurocopter Corp., Inc.*, 245 F.3d 403, 427 (5th Cir. 2001) (citing *Smith v. Aqua–Flo, Inc.*, 23 S.W.3d 43, 47 (Tex. App.—Houston [1st Dist.] 2000, writ denied)); see also *Polanco v. Innovation Ventures, LLC,* No. 7:13-cv-568, 2014 WL 12599332, at *2 (S.D. Tex. May 5, 2014).

47. The Product, which was delivered to Plaintiff by Defendant and ultimately used by Plaintiff, was, at the time of delivery, in a defective condition and unreasonably dangerous to the ultimate user. The defective condition of the Product allowing unanswered Facetime calls, even when in do not disturb mode, to be completed and record the conversation and activity of the consumer/user of the product who did not answer the phone caused an inherent risk of harm to exist in the Product and this harm arose from the intended use of group Facetime calls that Defendant's update (the Product) was released to consumers to update Apple devices so the group Facetime feature could be used.

48. Here, Defendant could reasonably foresee at the time of marketing that allowing unanswered Facetime calls, even when in do not disturb mode, to be completed and listen or record the conversation and activity of the consumer/user of the Product who did not answer the phone presented a risk of harm. Defendant in fact marketed the product as being very secure and private, "If privacy matters in your life, it should matter to the phone your life is on." Apple,Inc., Privacy on iPhone youtube.com (2019)."

49. On January 28, 2019 Apple CEO Tim Cook stated, "We must keep fighting for the kind of world we want to live in. On this #DataPrivacyDay let us all insist on action and reform for vital privacy protections. The dangers are real and the consequences are too important."

50. The Product was defective and unreasonably dangerous in that it failed to conform to the Product design and specifications of other software updates, where it failed to prevent the sudden and unexpected answering when used in accordance with the instructions. Such defect constituted a producing cause of Plaintiff's damages.

51. The Product was defective and unreasonably dangerous, because there was a lack of adequate warnings and notices that the Product could inadvertently answer a call without the consumer's knowledge or permission, in a way not warned of or contemplated by the ordinary user of the Product. Such defect constituted a producing cause of Plaintiff's damages.

52. As a direct result of the defective condition of the Product, Plaintiff sustained the damages and losses described herein. Had the Product not been manufactured, designed, distributed or sold by Defendant in such an unreasonably dangerous condition, Plaintiff's damages would not have occurred. Had the Defendant provided adequate warnings when it was first made aware of the defect the Plaintiff would not have used these devices on January 25, 2019 and the damages to Plaintiff would not have occurred. The Defendant had should have known or had reason to know of the defects as early as January 19, 2019 as there were tweets to Apple support about the defect on that day in addition to letters sent to Defendant's General Counsel as early as January 22, 2019.

## XI. BREACH OF EXPRESS WARRANTY

53. Plaintiff incorporates the facts and allegations explained above as if fully set forth herein.

54. Defendant is the designer, manufacturer, assembler, distributor, and/or seller of the Product. Defendant sold and shipped the Product to Plaintiff.

55. Defendant expressly warranted that its Product was safe for the ordinary use when used in compliance with the instructions provided. The products intended use is as a communication device between people whether by telephone calls, text messages, emails or facetime calls. The product and (facetime calls specifically) is intended to be used by consumers such as the Plaintiff to communicate with other iPhone users whom the consumer chooses to communicate with and this is evidenced by the products normal process which consist of the device ringing and the consumer having the option to answer or decline to answer the call or facetime call. The product intended use was not for consumers to be able to be recorded wherever they are because the product allowed a caller to listen to the consumer's conversations without the consumer answering the call and while the product was placed on do not disturb mode.

56. Defendant's affirmations regarding the safety of its product formed a basis of the bargain for Plaintiff's, without which the Plaintiff would not have purchased Defendant's Product.

57. The Product did not conform to the Defendant's affirmations regarding the safety of its product.

58. As a direct and proximate result of Defendant's breach of express warranties, Plaintiff sustained the damages described herein.

## XII. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

59. Plaintiff incorporates the facts and allegations explained above as if fully set forth herein.

60. Defendant is the designer, manufacturer, assembler, distributor, and/or seller of the Product. Defendant sold and transmitted/shipped the Product to Plaintiff.

61. Defendant impliedly warranted that its product was merchantable, fit for the ordinary purpose for which it was sold or used, was of fair average quality so as to pass without objection in the trade, and conformed to Defendant's own affirmations regarding the Product's safety features and overall safe condition.

62. Defendant breach its implied warranty of merchantability, as the Product did not conform to the Defendant's affirmations regarding the safety features and overall safe condition of the Product, the Product was not fit for the ordinary purpose for which it was sold or used, and was not of fair average quality so as to pass without objection in the trade. The Product's intended use as a communication device between people whether by telephone calls, text messages, emails or Facetime calls. The Product and (Facetime calls specifically) is intended to be used by consumers such as the Plaintiff to communicate with other iPhone users whom the consumer chooses to communicate with and this is evidenced by the products normal process which consist of the device ringing and the consumer having the option to answer or decline to answer the call or Facetime call. The Product's intended use was not for consumers to be able to listen or record whenever wherever they are because the Product allowed a caller to listen to the consumer's conversations without the consumer answering the call and while the product was placed on do not disturb mode.

63. As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff sustained the damages described herein.

## XIII. BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

64. Plaintiff incorporates the facts and allegations explained above as if fully set forth herein.

65. Defendant is the designer, manufacturer, assembler, distributor, and/or seller of the Product. Defendant sold and shipped the Product to Plaintiff.

66. In transmitting its Product to Plaintiff, Defendant, through its agents, servants, employees and apparent agents acting within the scope of their employment, authority, or apparent authority, made representations and promotions concerning the particular purpose to which Plaintiff would put the Product to use and knew or should have known of the particular

purpose to which Plaintiff would put the Product to use. Defendant impliedly warranted that the Product would be fit for such particular purpose. The Product's intended use is as a communication device between people whether by telephone calls, text messages, emails or Facetime calls. The Product and (Facetime calls specifically) is intended to be used by consumers such as the Plaintiff to communicate with other iPhone users whom the consumer chooses to communicate with and this is evidenced by the products normal process which consist of the device ringing and the consumer having the option to answer or decline to answer the call or Facetime call. The Product intended use was not for consumers to be able to be listen or recorded whenever wherever they are because the product allowed a caller to listen to the consumer's conversations without the consumer answering the call and while the Product was placed on do not disturb mode.

67. Defendant breached its implied warranty of fitness for a particular purpose, as the Product did not conform to the Defendant's affirmations regarding its product being fit for such particular purpose. The Product's malfunctioning and overall unsafe condition rendered it unfit for that purpose.

68. As a direct and proximate result of Defendant's breach of the implied warranty of fitness, Plaintiff sustained the damages described herein.

## XV. INTERCEPTION OF COMMUNICATION

69. Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

70. Defendant by way of the "Product" intercepted, attempted to intercept, and employed and/or obtained another to intercept or attempt to intercept the communication, of Plaintiff's private communication by way of the "Product".

71. The Defendant through employees, aided or knowingly permits interception or attempted interception of the communication.

72. Defendant interception of communication, as the Product aided another to the intercept the private communication of Plaintiff. The Product's malfunctioning and overall unsafe condition allowed the communication to be intercepted.

73. As a direct and proximate result of Defendant's interception of communication, Plaintiff sustained the damages described herein.

## XVI. PUNITIVE AND EXEMPLARY DAMAGES

74. Plaintiff re-alleges and incorporates herein the foregoing allegations of this Complaint as if set forth herein in their entirety.

75. Defendant failed to do what a reasonable prudent software and technology company would have done under the same or similar circumstances, did that which a software and technology company of ordinary prudence would not have done under the same or similar circumstances, and was negligent, in the following particulars, among others:
    a. failing to adequately test; and
    b. failing to notify consumers, including Plaintiff.

76. The foregoing acts, omissions, or both, of Defendant, taken singularly or in any combination, when viewed objectively from the standpoint of Defendant at the time of their occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to consumers, including Plaintiff. Defendant was aware there was a high probability at least some consumers would suffer harm. Defendant had actual, subjective awareness of the risks involved, but nevertheless recklessly proceeded with conscious indifference to the rights, safety or welfare of consumers, including Plaintiff.

77. The foregoing acts, omissions, or both of gross negligence were performed (or failed to be performed) by Defendant, in that such conduct was the conduct of:
    a. one of the corporate officers of Defendant;
    b. one or more persons who had the authority to employ, direct, and discharge servants of Defendant;
    c. one or more persons who were engaged in the performance of non-delegable or absolute duties of Defendant; or
    d. one or more persons whom Defendant had confided the management of the whole or a department or division of its business.

For the foregoing reasons, Plaintiff seeks punitive or exemplary damages from Defendants.

## XVII. JURY DEMAND

78. Plaintiff requests that this action be heard by a jury.

## XVIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that Defendant be summoned to appear and answer herein and that upon final trial, Plaintiff have:
    a. Judgment against Defendant, jointly and severally, for compensatory damages in excess of the jurisdictional amount of this Court;
    b. Judgment against Defendant, jointly and severally, for punitive or exemplary damages in excess of the jurisdictional amount of this Court;
    c. Pre-Judgment interest;
    d. Post-Judgment interest;
    e. cost of court;

f. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Petition or by any amendment hereto.

Respectfully submitted,

**The Mattox Law Firm, PLLC**

By: /s/Tyne' N. Mattox_____
Tyne Mattox
Federal Bar: 3062107
E-Mail:  tynen@themattoxlawfirm.com
2800 Post Oak Blvd Suite 4100
Houston, Texas 77056
Telephone: (832) 899-5484
Facsimile: (832) 843-9991

James C. Mattox, III (*pro hac vice forthcoming*)
jamesc@mattoxlawfirm.com
The Mattox Law Firm PLLC
2800 Post Oak Blvd Suite 4100
Houston, Texas 77056
Telephone: (832) 899-5484
Facsimile: (832) 843-9991

Kelley Anderson (*pro hac vice forthcoming*)
kelley@andersonlawllc.com
The Anderson Law Office
PO Box 56671
St. Louis, MO 63156
Telephone: 314-203-4503
Facsimile: 314-754-8294